## Case No. 16,490.

### UNITED STATES v. THOMPSON.

[6 McLean, 56.] [1]

Circuit Court, D. Michigan.   Oct. Term, 1853.

INDICTMENT — CAPTION — CUTTING TIMBER FROM PUBLIC LANDS.

1. The caption or title is no part of the presentment of the grand jury, and may be amended after verdict as a clerical error.
   [Cited in U S. v. Bornemann, 35 Fed. 826.]
   [Cited in State v. Brennan (S. D.) 50 N. W. 627.]

2. Not necessary, in an indictment for cutting timber, to state the class of lands from which the trees were cut.

3. Such a description as shows the accused the offense with which he is charged, is sufficient.

4. Where a statute creates an offense, and the indictment charges the same in the precise words of the statute, it is unnecessary to prefix to the charging words, the word "unlawful," or any other word showing a wrongful intention.

Motion in arrest of judgment.

Mr. Hand, U. S. Dist. Atty., and Mr. Frazer, for the United States.

Van Arman & Walker & Lathrop, for defendant.

WILKINS, District Judge. Several reasons are assigned for the arrest of the judgment of the court, comprising various objections to the indictment.

---

1 [Reported by Hon. John McLean, Circuit Justice.]

The 1st objection is, as to what is technically termed the "caption," or that the court is not properly entitled. We consider that this objection has been long settled, both in England and in this country. Forming no part of the indictment or presentment of the grand jury, being in fact no more than the clerical endorsement of the record, unnecessary as giving information to the accused, it is only matter of astonishment, that such a technical exception should now be gravely argued in court. In the language of Lord Mansfield, in 1 Saund., and which has been adopted by the most reliable American cases, it is only a copy of the style of the court at which the indictment is found, and is amendable at any time before removed to a higher court. And, if the objection could now be entertained, so as to defeat justice, it would be giving judicial weight to technical exceptions—calling loudly for legislative interposition. Moreover, there is no great fault to be found in this caption. The court is in fact properly entitled: "District Court of the United States." The other words in relation to "Seventh circuit," may be treated as surplusage, without any formal amendment.

The 2nd objection is, that the indictment, in its description of the offense, does not specify the class of lands on which the trespass was committed, so as to distinguish between the lands reserved and those not reserved for naval purposes. This was unnecessary. The act of 1817 [3 Stat. 347], based upon the provision of law for the preservation of ship timber for the use of the navy of the United States,—contemplated only the punishment of cutting naval timber—where the same was cut and removed without authority. The act of 1831 [4 Stat. 472] was designed to extend the efficacious and salutary provisions of the first act,—to all the public lands,—and to all timber, whether naval or otherwise. Under either statute, the secretary of the navy could authorize an agent to cut and remove any timber from any of the lands of the United States, whether reserved or not. Such is the import of the closing language of the 1st section of the act of 1831, creating these offenses: "other than for the use of the navy of the United States." Therefore, the allegation negativing the fact, that timber was cut "other than for the use of the navy of the United States," is sufficient to describe the offense charged. What is the object of the general rule in criminal pleading, requiring a specific and succinct description of the offense, but that the accused may be apprised of what he is accused, by such a clear and intelligible description that he cannot be misled, but may know what charge he is called upon to meet? The old beaten paths of the common law, so much the subject of humorous comment, during the argument, had this principle as their foundation; although many of the old decisions, by too great an observance of technical terms, favored the escape of the guilty. But modern ruling is more consistent with common sense, and the safe administration of justice. All that is required now, is embraced within two simple principles: (1) Charge the offense as defined or described in the law. (2) Describe it intelligently, as to manner, time and place. Such is the description as contained in this indictment. The statute declares the act of "cutting any live oak or red cedar 'or other timber,' from any lands of the United States, with intent to export, use or employ the same in any manner whatsoever, other than for the use of the navy of the United States," a misdemeanor:—I say a misdemeanor—although the term is not employed, but is implied; as the individual so doing is treated as an offender, and punished, on conviction, with fine and imprisonment. This indictment describes the offense in the precise words of the statute—thus—"that the said William Thompson, did, on the 1st of October, 1853, at the county, and township, and range, and section, specially described, a certain close of the United States; viz., the township, and range, and section aforesaid, broke and entered; and certain timber, viz., 5,000 pine trees—there standing and growing, and being on the said lands of the United States,—cause to be cut, felled, and prostrated, with intent, the said timber, then and there to use and employ in another manner than for the use of the navy of the United States, to wit, —for his own private use, etc."

It is difficult for the court to conceive what other language could better describe the offense; or, wherefore there should be an additional showing, that the lands so specifically described, according to the public survey, had not been, and were not reserved for naval purposes. The legislature, by positive enactment, declares that act a crime, which before was but a civil trespass: the act itself was prior to this period unlawful, but not punishable by indictment; and the statute now describes the characteristics of the offense which it creates and punishes— they are two: (1) Cutting timber on the public lands. (2) Cutting with the intent designated. It is true, that the whole scope and spirit of the land laws of the United States, especially the provisions enacted since 1831, encourage and invite actual settlement on the public domain, and bestow upon the settler or pre-emptor certain privileges upon certain prescribed terms. But this invitation is not to trespassers or squatters, nor is there, even in the recent legislation of congress, any provision countenancing the cutting of timber on the lands of the United States, for the private profit of the cutter, or, for his own use, beyond that which might indicate an intention of preemption, which must be consummated within a brief period, or the cutter is deemed a trespasser ab initio. I am clearly of opinion, then, that this exception is not well taken, that no such classification is necessary, and that it is sufficient to allege the

trespass, as in this indictment, by the particular township, range or section.

The next objection, and which embraces substantially the 4th and 5th is, that there is no act set forth, from which the law will presume a "criminal intent." I copy the precise words of the exception. The argument took a wider range; but, in determining the validity of the objection, the court will consider the suggestions made as applicable to the particular exception. It is urged, that the description of the offense is defective, because there is no term employed showing a wrongful act or criminal intention. In support of the proposition, it is insisted that the statute of 1831, being part of one general system of legislation, designed to punish as criminals, only those who wrongfully entered the public lands, and wrongfully cut timber thereon, and wrongfully removed the same after it was cut. That antecedent to the enactment, cutting timber on the public lands, was not wrongful or unlawful; and that the offense under this act must be so described. The court has already, on three different occasions, fully commented on this statute, and given to its provisions a judicial construction. These views need not now be recapitulated.

The position is well taken, that the act of 1831 is part of a general system; that all the land legislation, pari materia, may be considered one law, that there are benign provisions encouraging settlement, and contra-distinguishing the pre-emptor, the bona fide settler, from the lawless trespasser; that the former may, for the manifest purposes which are consistent with his settlement and contemplated pre-emption entry, cut such timber as corresponds with his supposed legal immunity; and furthermore, that a wrongful intention is essential to constitute any act a crime. To all these propositions, the court most cordially assents. But they are not involved in the exception taken to this indictment. An unlawful act is alleged; and consequently an unlawful intention will be presumed, on the proof of such unlawful act. Prove the allegata, and the intention is established, to be rebutted by the defense. This principle is as old as the criminal law. The act of homicide implies malice, because the act is proof of the intent. But, it is urged that a manifest distinction exists in this respect, between mala prohibita and mala per se. That distinction the court fully recognizes. But its applicability to the point in question, is not so clearly apprehended. An evil, prohibited, merely, is not that act which was an evil before prohibition; but that which is made an evil only by legislation. If a trespass upon the public lands, and destroying the valuable timber, was never an evil or an offense until the act of 1831, then

there would be some weight in the argument; but such was not the case, for although the act was not before punishable by indictment, yet, it was in itself a wrongful, yea, an immoral act, an evil of itself, and for which the trespasser was answerable in damages recoverable by civil action. It is true, the intention to enter a pre-emption claim, vests certain privileges, and within their scope, the party may freely act, without being amenable to this statute; yet the existence of such an inchoate right, a mere privilege, not a consummated right, which could be perfected at the option of the party, is only available as matter of defense, and must be shown by proof only within the knowledge and power of the defendant. It is matter of defense, then, and not matter of pleading, and need not be anticipated by the prosecution. The indictment alleges, in the very words of the statute, the wrongful act, which it prohibits; and describes the offense with all the certainty of the statute itself. What more particularity can be required; what "obvious intention" has been disregarded; and what "known principle of law" would demand greater nicety? To prefix the words "unlawfully or knowingly" to the charging terms, would not serve any purpose favorable to the defendant; it would give him no clearer notice of the offense. His act of cutting or removing, was either lawful or unlawful, according to the circumstances attending the transaction. If he cut, as a pre-emptor, he can shew it; if he removed, he can shew it. Wherefore, then, does substantial justice require the insertion of these words? The known principles of law do not require it, nor does the statute, in its spirit or purview, demand it. Such is no part of the statutory description of the offense.

Upon this point the law has been long, and to my mind, clearly settled, by an unruffled current of authority, both in England and in this country, from Bacon's Abridgement to Sumner's Reports, and Wharton and Blackford but copy the old rule, tread in the old well beaten path of the common law, which is common sense and substantial justice. Bacon says: "Where the act itself is unlawful, the law infers an evil intent." Story says: "Where it is not required by the state, it need not be averred;" and Mr. Justice McLean, in his opinion in the Case of Lancaster, does not express a different ruling, or warrant the interpretation that has been given to his language.

The court holds then, that this exception is not well taken. Setting forth the act prohibited in the words of the statute, is all that is required; and on the proof of such act, the law will infer a criminal intent. Motion to arrest refused.