Powers *vs.* The State of Georgia.

ASBURY H. POWERS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. The offense of incestuous fornication is not a joint offense under section 4459 of our Revised Code, and one person may be indicted and found guilty thereof.

2. Where, on a trial for incestuous fornication of A with his sister, the sister was introduced as a witness, and on cross-examination she denied that one Powers (her brother-in-law,) had sued the defendant in her name, and the Court permitted proof to be made that a suit was pending in her name by Powers as her next friend, but refused to permit the declaration and accompanying papers to be read to the jury :

*Held,* That this was not error, as the contents of the paper were not material to the issue, which was simply whether or not a suit had been brought by Powers in her name.

3. When a written request was made by the defendant's counsel to the Judge to charge the jury, which request covered the whole case, and the Judge in his charge failed to follow the language of the request, but charged the law properly upon the points made, and upon the whole case, and the defendant was found guilty :

*Held,* The section 3664 of the Code, providing that a new trial *may be granted* on the refusal of the Judge to charge a pertinent charge in the language requested in writing, is not mandatory, but permissive only ; and when the Judge has, in fact, charged the language correctly on the points covered and upon the whole case, and has refused a new trial, this Court will not, for this reason only, grant a new trial.

4. No precise rule can be laid down here, for the evidence of an accomplice in a felony must be corroborated by another witness, or by circumstances; but a defendant cannot complain of the charge of the Judge on this point who tells the jury that the evidence of the other witness, or the corroborating circumstances must be sufficient to satisfy them beyond a reasonable doubt of the guilt of the prisoner.

5. In this case, while we are not entirely satisfied with the verdict, yet, as the case turns mainly upon the credibility of the witnesses—a matter specially within the province of the jury—and as the Court below has refused a new trial, we do not think it our duty to interfere with his judgment.

Criminal Law.     Before Judge HOPKINS.     DeKalb Superior Court.     April Term, 1871.

Powers, alone, was charged with "incestuous fornication," in that, on the, etc., being an unmarried man, he had carnal

knowledge of Amanda Powers, an unmarried female, who was his sister.    Upon arraignment, he demurred to the indictment upon the ground that said offense is a joint offense, and no provision was made by law for a separate indictment therefor.    The demurrer was overruled.    On the trial Amanda Powers testified substantially as follows:    She lived now with her brother-in-law, Reeves, but in 1869 lived with her brother, the defendant.    In December 1868, defendant had carnal knowledge of her against her will, and continued to have till March 1869, when she left his house.    She had a child, the fruit of this intercourse, in November 1869: it is alive.    She made certain contradictory statements as to dates, etc.    There was an attempt to show an improper intimacy between her and one Burdett, but she denied it.    She said she did not tell any one about the matter till she moved to Reeves'.    She denied having been willing to settle for $1,000; said Reeves was not trying to get money for her; she did send Ramsey to defendant; and he has not been representing her to get money from defendant.    She said she sued her brother after she was twenty-one years old, in her own name; that she is now twenty-four years old.    She denied having told Ann Corley, just before she left for Reeves' that she had never had criminal intercourse with defendant, and that Burdett got it up to disgrace her; and she denied telling her and Miss Gardner so after that; she said she never told anything of the kind.    She said she had never gotten any part of her father's estate, that defendant was her guardian, and as such she sued him; that is the suit pending.

Her uncle, Burdett, father of said Burdett, testified that in November 1868, about daylight, he was passing defendant's and through a crack of the house saw him over Amanda, with his pants off, trying to have carnal knowledge of her, heard her insist that he should not, and him say he would, and witness passed on, and did not mention it to any one, neither to his wife nor any member of the family, nor to any one till the Spring of 1870.    He admitted that he and

defendant had had a quarrel and had not spoken to each other for a long time. The State proved that she and defendant were unmarried, and closed. Mrs. Corley and Mrs. Gardner testified that Amanda did tell them at said times that her brother had never hinted such a thing as carnal intercourse with her, and they testified that they would not believe her on oath, because of her bad character. And Mrs. Gardner testified that from the general character of the witness, Burdett, she would not believe him on oath. Three other witnesses, akin to defendant, testified that Burdett's an Amanda's characters were so bad that they were unworthy of belief on oath. Defendant's counsel offered in evidence an action by Amanda, by Reeves as her next friend, against defendant for trespass in violently having carnal knowledge of her, begun in September 1870, with a garnishment founded upon it, in which Ramsey stood Reeves' security for costs and damages. The Court permitted so much of it to be read as showed when it was begun.

In rebuttal, four or five witnesses sustained Burdett as a man of such character as that his testimony should be believed, and several of them so sustained Amanda. Defendant stated that the charge was false, that he had whipped Amanda because she would go to Burdett's against his orders, and this raised them against him. His counsel requested the Court to charge as follows : " In criminal cases, a preponderance of testimony is not sufficient to authorize a verdict of guilty. Preponderance of testimony is sufficient in a civil case, to produce mental conviction, but in all criminal cases, a greater strength of mental conviction is necessary to justify a verdict of guilty. In this case, if you have a reasonable doubt growing out of the evidence, as to the prisoner's guilt, you are, under the law, bound to give him the benefit of such doubt, and return a verdict of ' not guilty.' You are not authorized to return a verdict of guilty without *plain* and *manifest* proof of the prisoner's guilt. In this case, entrusted as you are with the administration of public justice,

Powers *vs.* The State of Georgia.

on the one hand, and the liberty and honor of the prisoner, on the other, your duty calls on you, before you pronounce a verdict of condemnation, to ask yourselves whether you are satisfied, beyond a reasonable doubt, that the prisoner is guilty of the offense alleged against him in the indictment. In criminal cases, the guilt of the accused should be fully proved. Neither a preponderance of testimony, nor any weight of preponderant evidence, is sufficient, unless it generates *full belief* of the prisoner's guilt, to the exclusion of all reasonable doubt. If such reasonable doubt is created, it is the duty of the jury to acquit. In criminal cases, charging the prisoner with a felony, the testimony of an accomplice is not sufficient to authorize a verdict of guilt. Before the jury can convict upon the testimony of an accomplice, there must be other testimony in corroboration of the facts testified to by the accomplice. In all felonies where the only witness is an accomplice, unless such witness is corroborated by circumstances, the jury cannot find the accused guilty; there must either be another witness to the same facts, or corroborating circumstances. Where the only witness in a criminal case testifies falsely to a leading fact, respecting which there could be no mistake or misapprehension, such witness being corroborated by another witness or circumstances as to immaterial matter, will not restore the witness to credit, or authorize a conviction upon the evidence of that single witness. If a witness swear *wilfully* or *knowingly false*, even to a collateral fact, such testimony ought to be rejected *entirely*, unless it be so corroborated by circumstances or other unimpeached evidence, as to be irresistible."

The Court charged the jury as follows: "The defendant begins the trial with a presumption of innocence in his favor, and that presumption continues until it is removed by proof. The proof must satisfy you, beyond a reasonable doubt, of his guilt. If there is a reasonable doubt resting on your minds—a doubt that is reasonable and grows out of the testimony, and leaves the mind wavering and unsettled—it is

Powers *vs.* The State of Georgia.

your duty to acquit him.   Absolute certainty is not to be attained by judicial investigations; a moral or reasonable certainty is all that the law requires, and all that is attainable.   Still, the defendant's guilt must be made plainly and manifestly to appear; it must be shown beyond a reasonable doubt before you can convict.   If you should find from the testimony, that the witness, Amanda Powers, voluntarily contributed or aided in the perpetration of the offense with which the defendant is charged, you cannot convict on her testimony alone, but in that case there must be another witness or corroborating circumstances, and this additional testimony or corroborating circumstances, must be sufficient to satisfy your minds, beyond a reasonable doubt, of his guilt. If a witness swear wilfully or knowingly false, to any fact, he is not to be believed, and the facts stated by him must be shown to be true by other testimony before you would be authorized to believe them.   If witnesses are impeached by proof of general bad character, by proof of contradictory statements, or otherwise, they may be supported by proof of general good character, and their credibility is a question for the jury.   It is for the jury to determine whether they are to be believed."

The jury found the defendant guilty.   His counsel moved in arrest of judgment, upon the grounds that said offense was joint, and defendant could not be indicted separately therefor, and because the charge did not constitute incestuous fornication.   This motion was overruled.   They then moved for a new trial, averring that the Court erred: 1st, in overruling said demurrer to the indictment; 2d, in refusing to allow the suit against defendant and the garnishment papers, to be read to the jury, to show the character of the suit; 3d, in refusing to charge as requested; 4th, in refusing to arrest the judgment on the grounds taken therefor, and 5th, because the verdict was contrary to law and the evidence, etc.   The Court refused a new trial, and error is assigned on said grounds.   He was sentenced to three years imprisonment.

HILL & CANDLER, for plaintiff in error. The demurrer was well taken : R. Code, secs. 4459, 4460 ; 18 Ga. R., 264. The whole record was admissible: R. Code, secs. 3663, 3815, 3820. The Court should have charged as requested : R. Code, secs. 3696, 3664 ; 3 Gr. Ev., sec. 29 ; 22 Ga. R., 235. The charge as given was wrong in part 2d : R. Code, sec. 3702 ; 2 Russell on Cr., 960. So it was in part 3d : 23 Ga. R., 297, 576. The motion in arrest was good: 38 Ga. R., 573.

E. P. HOWELL, Solicitor General; HILLYER & BROTHER, for the State. Demurrer was bad as to the charge : 12 Ga. R., 323 ; 15th, 241 ; 22d, 235.

McCAY, Judge.

1. Nothing can be plainer than that the crime of incestuous fornication is, by our statute, *not* a joint offense. The words are, "*any person* who shall commit incestuous fornication." By what rule of construction this can be made to mean, "if any two persons shall," etc., we are unable to see. The very next section of the Code, section 4460, punishing *fornication and* adultery, *does* make a joint offense, and uses very different language. "Any *man and woman* who shall," etc. It is hardly supposable that language so different should be used in almost the same sentence without a special intent. And there is great propriety in the distinction. The unnatural crime, prohibited in section 4459, as experience shows, is generally the act of a man upon a woman, over whom, by the natural ties of kindred, he has almost complete control, and generally he alone is to blame. There is a *force* used, which, while it cannot be said to be that violence which constitutes rape, is yet of a character that is almost as overpowering. Indeed, if it were necessary to make out a case of mutual consent, (and without this there is no joint offense,) we think but few cases of this unusual crime would be punished.

2. The only statement of the witness that made the proof

Powers *vs.* The State of Georgia.

of the pendency of the suit, in the name of the witness, by her brother-in-law, as her next friend, evidence at all, was that no such suit had been brought; that there was a suit in her own name, and not brought during her infancy. The proof of the pendency of the suit contradicted her statement, and the *contents* of the paper would have added nothing to the evidence *contradicting* the witness.

Nor was it a matter of much moment any way. She was, in fact, the plaintiff, and it would be a very harsh construction to hold her to have sworn falsely, because she did not know that her brother-in-law's name was used as her next friend.

3. The request to charge is not specially objectionable, save that it proposes to do a good deal more than is necessary to get the law to the jury. The illustrations it gives are, doubtless, true, and its distinction between civil and criminal cases is not illegal. But the charge of the Judge, as given, covers all the points made in the request, and is a fair and just explanation of the law to the jury. A refusal by the Judge to give in charge to the jury a pertinent legal written request is, by section 3664 of the Code, a ground for a new trial. But it is not error *per se;* as though he had expressed an opinion as to what was proven. A new trial may be granted for the error. It stands, therefore, like other errors. If they be material a new trial will be granted. But if they be immaterial this Court will not play at justice by making them material, and granting new trials for their correction. As we think no harm was done, and the prisoner lost nothing but the language of his counsel, we will not, for this reason, hold that the Judge ought to have granted a new trial.

4. The law does not and cannot lay down any rule to measure the extent of the corroboration necessary to support the testimony of an accomplice in a felony. The statute says, section 3702, in effect, that there must be another witness or corroborating circumstances. In this case there were many corroborating circumstances. The girl had a child,

the parties were living alone in a house with but one room ; they had been seen under circumstances indicating an intention on his part to commit this crime, if he could, and the Judge was very favorable to the prisoner—more so, we think, than strict justice required, when he told the jury that the additional witness, or circumstances of corroboration, must be such as to satisfy them beyond a reasonable doubt that the prisoner was guilty.

5. The evidence was pretty strong, going to discredit both of the witnesses, and we incline to think the preponderance was against them. But the credibility of witnesses is specially matter for the jury, and we are all aware how female witnesses are disposed to visit their direct condemnation upon a sister's fall. We do not feel it to be within our province to interfere in a case turning so completely upon the credit to be given to the witnesses as this. The mode of testifying— the tone—the look—the emphasis, given to words and that judgment of a witness which can only be formed upon what occurs, that cannot be reduced to writing, were all before the jury, and are not and cannot be before this Court.

Judgment affirmed.